IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BRANDON LEE JONES, an individual; and DEVIN JONES, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> OFFICER SKYLER LONG #659, Chattanooga Police Department, in his individual capacity; <br> OFFICER CUBA, Chattanooga Police Department, in his individual capacity; <br> OFFICER ABERNATHY, Chattanooga Police Department, in his individual capacity; <br> and the CITY OF CHATTANOOGA, a Tennessee municipality, <br><br> Defendants. | Case No. 19-cv-_____ <br><br> JURY DEMAND |

## COMPLAINT

Come now the plaintiffs, Brandon Lee Jones ("Plaintiffs" or "Mr. Jones"), and Devin Jones ("Plaintiffs" or "Mrs. Jones"), by and through counsel, and hereby file their complaint against the defendants, Officer Skyler Long, #659 Chattanooga Police Department ("Officer Long"), Officer Cuba, Chattanooga Police Department ("Officer Cuba"), Officer Abernathy, Chattanooga Police Department ("Officer Abernathy"), and the City of Chattanooga, Tennessee, a Tennessee municipality located in Hamilton County ("City") (collectively the "Defendants"), and state as follows:

1

# I. INTRODUCTION

1. The underlying facts of this civil lawsuit involve a married couple attempting to lawfully *deposit* money into their bank account as opposed to any illegal or criminal activity associated with stealing, withdrawing, or robbing money from a bank.

2. Mr. Jones is an African-American male, and Mrs. Jones is a Caucasian female. By virtue of the U.S. Supreme Court's landmark decision in *Loving v. Virginia*, 388 U.S. 1 (1967) approximately 52 years ago that struck down state laws banning interracial marriage, Mr. Jones and Mrs. Jones were able to legally marry and are lawfully married individuals and reside in Hamilton County, Tennessee.

3. As the product of their legal marriage, Mr. and Mrs. Jones have a young daughter who was two years old at all relevant times herein ("Minor Child"). Mr. and Mrs. Jones file this civil lawsuit pursuant to 42 U.S.C. §1983 for monetary damages as a result of the Defendants' violation of their constitutional rights.

4. The Defendants violated Mr. and Mrs. Jones' Fourth and Fourteenth Amendment constitutional rights to be free from unreasonable detention, restraint, interference, false arrest, and/or seizure of their person and body when Officer Long, Officer Cuba, and Officer Abernathy under color of law used excessive and unreasonable force by seizing, detaining, restraining, and falsely arresting Mr. Jones and seizing, detaining, and restraining Mrs. Jones.

5. The Defendants violated Mr. and Mrs. Jones' Fourth and Fourteen Amendment constitutional right to be free from unreasonable detention, restraint, false arrest, and/or seizure of their person and body on or about Sunday, September 9, 2018. At that time, Mr. and Mrs. Jones, accompanied by their Minor Child in the back seat of their vehicle, were attempting to lawfully make a cash deposit at their bank's night deposit drive-in window just before dusk.

2

Case 1:19-cv-00259-CHS   Document 1   Filed 09/09/19   Page 2 of 15   PageID #: 2

6. Without probable cause and without any reasonable articulable suspicion that a crime or illegal activity was being committed by Mr. Jones and Mrs. Jones, Officer Long, Officer Cuba, and Officer Abernathy unreasonably and falsely detained, seized, and arrested Mr. Jones, and unreasonably seized and detained Mrs. Jones.

7. Nine months later the criminal charges against Mr. Jones were eventually dismissed. However, Mr. and Mrs. Jones have suffered and continue to suffer from the Defendants' violation of their constitutional rights and seek redress through this Civil Rights lawsuit.

8. Accordingly, Mr. and Mrs. Jones are entitled to recover monetary damages from the Defendants for the violation and deprivation of their constitutional rights as set forth herein.

## II. PARTIES

9. The allegations of the preceding paragraphs are incorporated herein by reference.

10. Plaintiffs, Mr. and Mrs. Jones are residents of Hamilton County, Tennessee.

11. Defendant, Officer Long, is being sued in his individual capacity. At all relevant times herein, Officer Long was employed by the Chattanooga Police Department and may be served with process at its headquarters located at 3410 Amnicola Highway, Chattanooga, Tennessee 37406.

12. Defendant, Officer Cuba, is being sued in his individual capacity. At all relevant times herein, Officer Cuba was employed by the Chattanooga Police Department and may be served with process at its headquarters located at 3410 Amnicola Highway, Chattanooga, Tennessee 37406.

13. Defendant, Officer Abernathy is being sued in his individual capacity. At all

relevant times herein, Officer Abernathy was employed by the Chattanooga Police Department and may be served with process at its headquarters located at 3410 Amnicola Highway, Chattanooga, Tennessee 37406.

14. Defendant, the City, is a municipality and political subdivision of the State of Tennessee. The City oversees many departments and divisions including the Chattanooga Police Department. The City may be served with process through its City Attorney, Phil Noblett, at the City's headquarters located at City Hall Annex, 2nd Floor, 100 E. 11th St., Suite 200, Chattanooga, Tennessee 37402.

### III. JURISDICTION AND VENUE

15. The allegations of the preceding paragraphs are incorporated herein by reference.

16. This Court has subject matter jurisdiction over the causes of action contained herein pursuant to 28 U.S.C. §1331, 1343, and/or 1367.

17. This Court has personal jurisdiction over the parties.

18. Venue is proper in this Court pursuant to 28 U.S.C. 1391 (b) (1), and (2).

### IV. FACTUAL ALLEGATIONS

19. The allegations of the preceding paragraphs are incorporated herein by reference.

20. On September 9, 2018 just before dusk, Mr. Jones was driving his vehicle and Mrs. Jones was in the passenger side of the vehicle and their Minor Child was in the back seat of the vehicle.

21. Mr. and Mrs. Jones drove to their bank of nearly 10 years, First Volunteer Bank at its Gunbarrel Road location ("Bank"), in order to make an after-hours deposit.

22. Mrs. Jones began filling out the deposit slip while she was seated in the passenger

4

seat. Mr. Jones had pulled the vehicle into the designated drive through area at the Bank in order to complete their deposit transaction.

23. Approximately 3-5 minutes after they had entered the designated after hours deposit drive through area at the Bank, Officer Long approached the passenger side of their vehicle by himself with a flashlight shining into the vehicle.

24. Officer Long parked his police vehicle on the side of the Bank in an area that concealed his presence to Mr. Jones and Mrs. Jones, and he did not activate his vehicle headlights, blue lights, sirens, or alarms to warn of his presence.

25. Officer Long tapped on the vehicle window, and Mr. Jones electronically rolled the passenger window down about 1 inch.

26. Mr. Jones was not comfortable opening the window any further. Officer Long did not announce himself and approached Mr. Jones and Mrs. Jones unexpectedly.

27. Mrs. Jones had $400 cash in her lap and had been preparing the Bank's deposit slip to make the cash deposit, and the passenger window of the vehicle was not opened any further since they were able to communicate with Officer Long.

28. Officer Long stated he was there to check on a silent alarm that he received from the Bank. He proceeded to tell Mr. Jones and Mrs. Jones that he was notified that $4 million dollars had been stolen from this Bank location.

29. Officer Long asked what they were doing at the Bank. Mr. and Mrs. Jones replied, "We are making a deposit."

30. Officer Long stated to Mr. and Mrs. Jones, "This Bank is closed. You aren't able to make night deposits, the box is locked and this Bank doesn't accept night deposits."

5

31. Mr. and Mrs. Jones pointed to the night drop box, which was clearly designated as such, and stated to Officer Long that they had previously made deposits there before after hours and this box was indeed a night drop box for deposits.

32. At that point Officer Long walked around the front of the vehicle to the night deposit box. He shined his flashlight onto the deposit box which was labeled as a night deposit box.

33. Officer Long then returned to the passenger side of the vehicle and asked for identification. Mr. Jones replied, "Why do you need our identification? What's the problem, we are making a deposit."

34. Officer Long asked to see identification and Mr. Jones replied, "Are we under arrest?" Officer Long replied, "Yes!" Mr. Jones then replied, "We are? Under what charge?"

35. Officer Long then replied, "No, you're not under arrest you're being detained." Officer Long then asked Mr. and Mrs. Jones to get out of the vehicle.

36. At some point, Officer Cuba also approached the vehicle. Officer Cuba angrily asked Mrs. Jones, "Who is this guy and who is that in the backseat?" To which Mrs. Jones replied that Mr. Jones was her husband and their daughter was in the backseat. Officer Long and Officer Cuba both had their hands on the vehicle window. They both then forced their way into the vehicle by forcibly pushing down the passenger side window and reaching inside of the vehicle.

37. Mr. Jones and Mrs. Jones did not feel safe getting out of the vehicle and their Minor Child was in the backseat. Mr. Jones told Officer Long that if he needed to talk to him to come over to his side of the vehicle.

38. Officer Long stated he would have to break the passenger window of the vehicle. Mr. Jones stated to Officer Long that, "If you need to break a window to get in the car, you can come to my side and you have my permission to break my window. My wife has nothing to do with this."

39. Officer Long and Officer Cuba had their hands in the window of the vehicle forcing it down with night sticks and their hands.

40. Mr. Jones asked Officer Long and Officer Cuba why their nightsticks were forcibly being applied to the vehicle repeatedly to which they replied again to get out of the vehicle. They then asked Mr. Jones "why he was doing this to his wife."

41. Officer Cuba reached his hands inside of the vehicle by force, unlocked the door and Officer Long forcefully pulled Mrs. Jones out of the vehicle and slammed her down on the concrete, sat on top of her and put handcuffs on her.

42. At some point Officer Abernathy approached and he and Officer Long and Officer Cuba further entered the vehicle with Officer Cuba's gun drawn and he put it in Mr. Jones' rib cage.

43. Officer Cuba demanded that Mr. Jones get out of the vehicle. Mr. and Mrs. Jones' Minor Child was in the back seat. Officer Long and Officer Abernathy opened the driver's side door of the vehicle.

44. Mr. Jones, stated to them, "Grab my hands and pull me out of the car." One of the officers grabbed Mr. Jones' hands and led him to the back of the vehicle while Mrs. Jones was on the ground being handcuffed by Officer Long with the assistance of Officer Cuba.

45. Officer Cuba opened the back seat of the vehicle and reached into the vehicle and threatened to take the Minor Child along with Mr. Jones and Mrs. Jones to the police station.

46. The officers further searched the vehicle, Mrs. Jones' purse, and the baby bag used for the Minor Child. The officers also forcibly took Mrs. Jones' identification from inside of her wallet which was located inside of her purse in the vehicle.

47. While in handcuffs, Officer Cuba looked at Mr. Jones' identification and proceeded to ask Mrs. Jones, "Who is he to you." Mrs. Jones replied, "he is my husband and we've been married for 10 years." Officer Long also asked Mrs. Jones if Mr. Jones was her husband, to which she again replied with the same response that Mr. Jones was her husband and their daughter was in the backseat.

48. While Mrs. Jones was standing by the vehicle in handcuffs, she leaned forward to check on her daughter the Minor Child in the vehicle, Officer Long aggressively pushed Mrs. Jones back to the vehicle and stated, "You need to work on listening, told you to be still." To which Mrs. Jones stated that she was only looking at her daughter the Minor Child to check on her.

49. At no point did any of the officers state to Mr. Jones and Mrs. Jones that they were under arrest nor did they read Miranda rights to Mr. Jones and Mrs. Jones.

50. The officers arrested Mr. Jones and charged him with resisting arrest but there was no underlying charge levied against him, from which he was "resisting." Mr. Jones cooperated fully with the officers effectuating the arrest and never displayed any sign of force or resistance against the officers. Mr. Jones was processed in the jail, a mugshot was taken, and he spent the night confined in jail. Attached an incorporated herein by reference as *Exhibit A* is s copy of the complaint and affidavit sworn out by Officer Long. Eventually Mr. Jones was released from jail the next morning on his own recognizance and was not required to post a bond.

51. Officer Cuba eventually released Mrs. Jones from her handcuffs, and she was not

8

arrested and before he un-cuffed her, he angrily and defiantly stated to her, "I know exactly where you live, first building in the right, right?"

52. Upon information and belief, Don Long, an employee that oversees security at the Bank, indicated that the previous Bank alarm was related to the ATM machine in a different location from the night deposit box where the incident occurred.

53. Further, upon information and belief, no one from the Chattanooga Police Department ever bothered to check again with the Bank or its security employees regarding any alarm or the incident with Mr. Jones and Mrs. Jones that occurred that night.

54. In response to a subpoena in Mr. Jones' criminal matter, Don Long of the Bank provided the Bank's video footage of the incident that occurred attached hereto and incorporated herein as *Exhibit B*.

55. In further response to a subpoena in Mr. Jones' criminal matter, the City provided its dash cam and body cam video footage of the incident that occurred attached hereto and incorporated herein as *Exhibit C*. Further, upon information and belief, a police officer acting in a supervisory role was aware of the unconstitutional actions by these officers after reviewing and assessing the officers' actions in the video produced in the criminal matter but the supervisory officer was deliberately indifferent about the violations and did nothing to remedy the officers' behavior.

56. On June 17, 2019, the criminal charges against Mr. Jones were eventually dismissed. Attached hereto and incorporated herein as *Exhibit D* is the docket sheet in the criminal matter.

## V. CAUSES OF ACTION

### COUNT I-42 U.S.C. §1983
### Fourth Amendment
### (Officer Long, Officer Cuba, and Officer Abernathy, individually)

57. The allegations of the preceding paragraphs are incorporated herein by reference.

58. Under color of law, Officer Long, Officer Cuba, and Officer Abernathy violated Mr. Jones and Mrs. Jones' 4th Amendment right to be free from an unwanted seizure and deprivation when they unlawfully detained, seized, and arrested Mr. Jones, and when they unlawfully detained and seized Mrs. Jones.

59. The detention and seizure of Mr. Jones and Mrs. Jones by these officers as set forth herein was excessive and unreasonable under the circumstances.

60. These officers violated Mr. Jones and Mrs. Jones' clearly established constitutional rights under the 4th Amendment, and they are not entitled to qualified immunity.

61. A reasonable police officer under the circumstances would have known that a police officer, such as these officers, were not justified in detaining, seizing, and arresting Mr. Jones, and detaining and seizing Mrs. Jones.

62. These officers' use of excessive force, detention, seizure, and/or arrest against Mr. Jones and Mrs. Jones displayed egregious unreasonable behavior, callous and reckless disregard for human life, malicious intent, deliberate indifference, and shocks the conscience of reasonable people.

63. Accordingly, Mr. Jones and Mrs. Jones are entitled to receive compensatory damages, including without limitation, past, current, and future medical expenses, pain & suffering, emotional distress, past, current, and future lost earnings, and diminishment of their

quality of life. Mr. Jones and Mrs. Jones are further entitled to receive punitive damages to punish these officers for their actions.

**COUNT II-42 U.S.C. §1983**
**(Fourteenth Amendment**
**(Officer Long, Officer Cuba, and Officer Abernathy, individually)**

64. The allegations of the preceding paragraphs are incorporated herein by reference.

65. Under color of law, Officer Long, Officer Cuba, and Officer Abernathy violated Mr. Jones and Mrs. Jones' 14th Amendment right to due process and the deprivation of their liberty interest when they unlawfully detained, seized, and/or arrested them.

66. These officers' actions as set forth herein were excessive and unreasonable under the circumstances.

67. These officers violated Mr. Jones and Mrs. Jones' clearly established constitutional right under the 14th Amendment, and they are not entitled to qualified immunity.

68. A reasonable police officer under the circumstances would have known that a police officer, such as these officers, were not justified in their actions toward Mr. Jones and Mrs. Jones.

69. These officers' use of excessive force against Mr. Jones and Mrs. Jones and violation of their liberty interests displayed egregious unreasonable behavior, callous and reckless disregard for human life, malicious intent, deliberate indifference, and shocks the conscience of reasonable people.

70. Accordingly, Mr. Jones and Mrs. Jones are entitled to receive compensatory damages, including without limitation, past, current, and future medical expenses, pain & suffering, emotional distress, past, current, and future lost earnings, and diminishment of his

11

Case 1:19-cv-00259-CHS    Document 1    Filed 09/09/19    Page 11 of 15    PageID #: 11

quality of life. Mr. Jones and Mrs. Jones are further entitled to receive punitive damages to punish these officers for their actions.

## COUNT III-42 U.S.C. §1983
### Fourth Amendment and Fourteenth
### (The City-*Monell* Claim-<u>Official Policy and Custom</u>)

71. The allegations of the preceding paragraphs are incorporated herein by reference.

72. The City adopted an official policy at all relevant times which gave broad and unfettered discretion to an assistant police supervisor to oversee and review officer arrests by viewing officer dash cam videos and body cam videos to determine if such arrests were carried out in a constitutional manner.

73. This broad policy adopted and promulgated by the City's policymakers was not required or mandated under State statute. Rather, the City adopted this policy of broad and unfettered discretion to certain police supervisors overseeing and reviewing officer arrests from among many alternative policies.

74. As a result of placing this broad and unfettered discretion into various supervisory police officers, and such supervisors acting with deliberate indifference upon the confirmation of violation of citizens' constitutional rights, the City has ratified the egregious conduct and behavior as set for the herein of its officers, which led to the violation of Mr. Jones and Mrs. Jones' 4th and 14th Amendment rights to be free from an unwanted seizure and liberty deprivation.

75. It was reasonably foreseeable to the City that by adopting such a broad policy providing various supervisors with this unfettered discretion, Mr. and Mrs. Jones' constitutional rights would be violated.

76. This broad custom and policy that carries the force of law as if adopted and promulgated by the City's policymakers was not required or mandated under State statute. Rather, the City adopted this custom or policy that carries the force of law of broad and unfettered discretion being provided to supervisors overseeing and evaluating arrests made by officers, from among many alternative policies.

77. As a result of this custom or policy that carries the force of law of placing this broad and unfettered discretion into various supervisor's hands, the City has ratified these officers' egregious conduct and behavior in overseeing the seizure, detention, and arrest, which led to the violation of Mr. Jones and Mrs. Jones' 4th and 14th Amendment rights to be free from an unwanted seizure and liberty deprivation.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Mr. Jones and Mrs. Jones pray for the following relief:

A. Monetary damages in the compensatory amount of no less than $5,000,000.00 and punitive damages in the amount of no less than $15,000,000.00, for a total of $20,000,000.00, against Officer Long, Officer Cuba, and Officer Abernathy in their individual capacities, pursuant to Count I;

B. Monetary damages in the compensatory amount of no less than $5,000,000.00 and punitive damages in the amount of no less than $15,000,000.00, for a total of $20,000,000.00, against Officer Long, Officer Cuba, and Officer Abernathy, in their individual capacities, pursuant to Count II;

C. Monetary damages in the compensatory amount of no less than $5,000,000.00 against the City pursuant to Count III;

D. Attorneys' fees against all Defendants pursuant to 42 U.S.C. § 1988;

E. That a jury of six (6) persons be empaneled to try the issues in this case; and

F. That Mr. Jones and Mrs. Jones have such other, further, and general relief to which they may be entitled.

September 9, 2019
Chattanooga, Tennessee

Respectfully submitted,

**DUNCAN, HATCHER, HOLLAND, AND FLEENOR, P.C.**

*/s/ M. E. Buck Dougherty III*
**M. E. Buck Dougherty III, BPR #022474**
**Adam U. Holland, BPR #028083**
1418 McCallie Avenue
Chattanooga, TN 37404
423-266-2207
***Attorneys for the Plaintiffs***
bdougherty@duncanhatcher.com
aholland@duncanhatcher.com

14

## VII. ADDENDUM

## EXHIBITS

A. Criminal Complaint/Affidavit against Mr. Jones

B. First Volunteer Bank video [manually filed]

C. Dash board/body camera video-City of Chattanooga/Police [manually filed]

D. Docket of GS/Criminal Court-dismissal of charge against Mr. Jones